Case number 20-1104 et al. Louisiana Public Service Commission Petitioner versus Federal Energy Regulatory Commission. Mr. Fontham for the Petitioner, Ms. Banta for the Respondent. Mr. Fontham, good morning. Good morning, Your Honor, and may it please the Court. I'm Mike Fontham. I represent the Louisiana Public Service Commission. This case is controlled by the Court's decision in number 17-1251. There are two holdings in that case that are controlling and dispositive here and that cut the foundation out of my opponent's arguments. The first was not covered, and I apologize for this, in my August letter. The second was, but I will speak of the one that was omitted first. In that case, Energy was arguing that an operating company could include an off-system sale in its load, and that had not been done for this case purposes with regard to the Grand Gulf sales in 2000, so that's what keeps it out of the case. But it was for a different purpose that was argued in 12-51. The Court said, no, you're wrong. FERC held, and this is in FERC's opinion, 5-21 at Paragraphs 128-29, that the violation was not a violation of 30-03a. It was a violation of 30-04, and the Court affirmed FERC's ruling that 30-03a was ambiguous, and it said, this is on page 5 at the top of their memorandum, finding Section 30.03 to be ambiguous, it determined that the opportunity sales were best understood as sales to others under Section 30.04. This meant that the opportunity sales should have been deemed to have been fulfilled with the most expensive energy on the energy system. I don't want to, time is limited, and I do want to get to this. I'm concerned about whether we have jurisdiction. Now you laid out in your supplemental brief the elements of standing, but you didn't lay them out very fully. Before you listed briefly, there has to be injury caused by the act of the defendant and remediable in the action. However, it's not just injury, it's injury personal to the plaintiff. What is the injury upon which you rely to the Commission? I rely on the injury to rate payers. No, no, no, no, no, no, no, no. Rate payers. What is the injury to the Commission? Under the Federal Power Act, Your Honor, we are the appointed representative of the rate payer. We are allowed to make a complaint specifically under the Federal Power Act, and we are allowed to pursue judicial review. Now, you know, in Baton Rouge, the Commission offices and the Commission offices throughout Louisiana all had to pay these higher rates, the ones that are being served by Energy Louisiana. So, there is an injury there, but I don't understand, and I think it would be out of step with every case. And you know, I've had cases here at the D.C. Circuit in which our standing was exactly that and nothing other. You know, we have said, though, that if standing, if jurisdiction is not expressly decided in a prior case, that case does not bind the future decision on the question of jurisdiction. Now, in the, what you've seen about the rate payers seems to smack a parent's patria standing, which is very limited when you talk about its availability to a state as against the federal government. If you look at Massachusetts versus EPA, that's pretty well written out of the possibilities for a state, and I'm going to not distinguish between a state and the state agency for a moment, but that's pretty well written out in the Massachusetts EPA. So, do you have an injury to the Commission itself that gives you Article III standing? Well, I explained to you what the injury to the Commission itself is, paying higher rates. The Commission's not paying higher rates, is it? The rate payers are paying higher rates. The rate payers are paying higher rates. Well, it's a rate payer. It has offices around Louisiana. It's a rate payer. Is that in the record that you're appearing as a rate payer in this? No, Your Honor. We did not appear as a rate payer. We appeared pursuant to Section 825 of the Federal Power Act. Give me the language upon which you're relying from 825. Read that language. I decided it. Read that language if you have it there, counsel. If you don't have it, just tell me you don't have it, but quote it as close as you can. I can tell you what it says. It says that any state commission may file a complaint concerning anything done wrong under the Federal Power Act, and 825L, I believe it is, which the court uses all the time with regard to jurisdiction, it says that a state commission can intervene on behalf, you know, or can intervene in any proceeding, and it says that a state commission specifically can appeal. And in 1251, we were appealing, and we were found to have standing. It wasn't questioned, but we were found to have standing, and the court dealt with our brief. In the brief on standing that we just filed? Yes, of course. I mean, I argued that, you know, we stand in the shoes of the rate payer under the Federal Power Act. The problem with that is it sounds to me like parents' patria standing, and the Supreme Court in the Commonwealth of Massachusetts, the EPA, tells us that that's not available to states, and I did find it confusing that your briefs go back and forth between commission and Louisiana's, but you're appearing as the commission, I think, not as the state, right? We're appearing that as the commission, but, you know, we're the, under the state constitution, we are the regulator, and the, I mean, it's a plenary grant of power in Article 4, Section 21 of the Louisiana Constitution, so we have the equivalent status to the legislature. Mr. Fonton, can I just ask you another question? Go ahead, I won't have any more. Okay, thank you. So you were starting off talking about sort of the original decision about whether these were opportunity sales or joint sales, I think, and I guess what I'm trying to understand is whether your argument is that FERC didn't say enough about the conclusion it made in this regard, or whether there's not sufficient record evidence to support the change. I understand that originally it was characterized, the Grand Gulf sales were characterized as opportunity sales, which you think was the correct way to refer to them and to address them, and then during Phase 3, they got re-characterized as joint sales, and that I understood to be part of what you are objecting to, but I guess I need to figure out and understand the basis of your objection. Are you saying that FERC couldn't, they didn't say enough about why they believed that they were joint sales, or the record doesn't support that conclusion, or both? It's both, Your Honor. That's the other ruling in the other case. I mean, FERC defined the opportunity sales in Opinion 521, and it included these sales based on Energy's testimony and representations, and then it ruled that the opportunity sales violated the system agreement, and the court already held that was a final decision. The only thing left was compliance, and this, you know, very discreet issue regarding the bandwidth, which didn't come into existence until 2005. It doesn't apply in any, have any relevance whatsoever to the liability. But was the original finding really a sort of litigated, disputed question of the nature of these sales, or they just put them all in the 2000 to 2009 basket without really focusing? Well, it was a litigated issue in this sense. Energy was arguing that an operating company can make sales, and that it can include it in its load, you know, regardless, and, you know, no matter what, it can, it can pretend it's a native load customer, basically. So they included these sales. We had asked for them to identify individual operating company sales, not joint sales. That's on page 1626 of the appendix. Right, but then they eventually said, okay, so we went back over this in the damages phase, and we made a mistake. We included things that we shouldn't have included. We are now presenting testimony that those things didn't count, and the FERC agreed and took them out. So what was wrong with the FERC's, other than the fact that it had originally included them, which I understand, but can it change its mind if there's evidence in the record to support the fact that that was a mistake? Not on the compliance proceeding. They had ruled, and this is why it's really important, that 3004 was violated. It should have been the most expensive energy. That applies to either one, joint account sales or individual sales. It doesn't, there's no distinction there, and that's what the court said. You get the most expensive energy, but when they got to phase three, and I don't know what came over FERC, except Energy was making the argument. Energy says, oh no, you ruled that it was 3003A that was the violation, and we didn't include these sales in Energy Arkansas's load, and therefore you should exclude them. So they based their argument on something that has now been ruled by this court in a final decision was not true, and FERC bought it for some reason, and you know, the fact that there was an additional violation does not undo the fact that it violated 30.04 to take Grand Gulf, which is one of the lowest cost resources on the system, and assign it to an opportunity sale, no matter what you call it, because it's supposed to be the most expensive energy, and you know, the rate payers were paying for this capacity. This system worked in such a way that everybody paid for Grand Gulf. It was allocated among the companies, and the retained share was included at full cost in the allocations, and you know, they took Energy that was supposed to go to the rate payers, and they sold it off system because they could get a benefit for the shareholder, and they bought power to replace it, or else they generated power at this, you know, $80 or so a megawatt hour when Grand Gulf costs $10, and they loaded that right into the fuel causes, so the rate payers had to pay. All right, so can I ask, you know, I'm mindful of the time. I'm trying to understand, in the wake of the settlement, which ultimately the FERC decides precludes you from making assertions concerning the impropriety of the calculations with respect to Grand Gulf, why is it that you think that you should be able to litigate this now? We thought everything was wound down. The settlement happened. First of all, why did it take so long for you all to file a petition concerning the Grand Gulf sales? Why was it not until 2019 that that happened, and the settlement intervened, didn't it? Yes, it did, Your Honor, but let me try to clarify this. We're mainly arguing about the 565 decision. We're not mainly arguing about our complaint. We only filed that complaint because FERC said go file a new complaint if you want to do something about this. Okay. In regard to your earlier question, you've got a final ruling now that FERC tried to change in this compliance proceeding. That's a collateral attack. They always dismiss that, and you've also got the fact that they say that it was allocated as a joint account sale. That's absolutely false. Now, they didn't cite any evidence. There was tons of evidence in the record that it was allocated energy from the Grand Gulf unit. It was not allocated energy from the incremental cost system dispatch that normally covers joint account sales. It's just a false statement, and there is absolutely nothing in the record to support it. They refused to comment on our evidence. Nobody denied what we said. It was unrebutted, and they just blew it off as if it wasn't there. I think they said something like, we are not convinced or persuaded by Louisiana's evidence. Well, that's not addressing the issue, as Judge Santel said in the first big rough equalization case. That's a conclusion. All right. Judge Jackson, has he answered your question? Yes. Thank you. All right. We'll hear from Ms. Banta. Could you start with where counsel left off on the statement that he's addressing there? Absolutely. Yes, Your Honor. Carol Banta for the commission. I would like to start by giving you a number of record citations for the commission's supporting the commission's finding that these as joint account sales. First of all, the commission found that in opinion 565 at paragraphs 102 and 104. Contrary to what you just heard, the commission did rely on evidence. It specifically cited its own trial staff, which if you look at paragraphs 97 and 98 of opinion 565, that's the recap. I do apologize that we did not include the trial staff's brief on exceptions in the joint appendix. We did not designate it for the joint appendix. Trial staff in its brief on exceptions cited both the trial staff witness Salmon's testimony, which we did include in the joint appendix and in our brief. That's at JA 904 and 909 in particular. The trial staff in its brief also cited the energy testimony or a data response. I forget which that had been put into evidence. It was in the record saying these were treated as joint account sales from the start. But I'd also like to point to places where the Louisiana commission itself has repeatedly agreed with that. In Mr. Barron's rebuttal testimony at joint appendix 1217 and also I believe at 1226, he stated that energy began including the Grand Gulf sales in load under section 30.03 in October 2000. Meaning that it was not before. And I'd like to come back to the 30.03 point. But I'd like to also in Louisiana's phase three rehearing request at JA 1378 and in its 2019 complaint at JA 1409, which the commission cited in its rehearing order at paragraph 28, note 63. Once energy put in phase three, as the commission said, it's the first time that the entire 10 year span of off system sales was examined and they went back to rerun the intrasystem bill and it involves a great deal of examination and recoding transactions to figure it out 10 years later. And energy came forward and said the first nine months of 2000, these off system sales were treated as joint account sales. That means they're not made on energy Arkansas's behalf. They're made on behalf of the system with revenue sharing among the operating companies. Ms. Banta, can you address Mr. Farntham's contention that the FERC had previously already said something different with respect to whether or not those sales were joint account sales and whether or not they violated 30.004? Well, I'm struggling to understand the argument that he's making and I'm trying to see what your to that answer. I want to emphasize looking at opinion 521, as well as this court's decision affirming it in all respects, the violation in the opportunity sales, which were off system sales made by energy Arkansas for its own account, not sharing among the companies, but for its own account. Entergy was including those off system customers in its loads, in its load shape under 30.03, instead of treating them as sales to others. It made the argument, Entergy did, which did not prevail before the commission or before this court, that those sales were part of its requirements and should be treated as part of loads under 30.03. The violation in 521 is the commission said that was the violation. Those are not loads, the way we read this, although we know it's ambiguous, because they are sales to others, they should be treated under 30.04. But let's be clear that there are two kinds of sales that can happen under 30.04. They're both sales to others. They're both sales off the company making the sale. That was one of the disputes in opinion 521 was even whether Entergy had the right to do that. And there is language in section 4.05 of the system agreement that says that joint account sales are sales off the system for which a company does not want to take sole responsibility. And the commission said by negative implication, there must be sales for which the individual company can take sole responsibility. So it's those sole responsibility sales that are the definition of opportunity sales. And I would point you, for one thing, to the language in 521 that petitioner themselves, Louisiana has emphasized in paragraph two, this is on JA 696 in footnote five. And this is the broad definition of what are the sales that issue here? What are the transactions that are at issue? The capitalized phrase opportunity sales refers to the disputed off system sales of energy by Entergy Arkansas. And we skip forward for its shareholders behalf. That means not joint account sales, because there was never any dispute, the joint account sales were permissible under 4.05 of the system agreement. The entire dispute was number one, Louisiana took the position that Entergy Arkansas had no right to make these sales at all. Opportunity sales, it unequivocally had the right to make joint account sales. The dispute was that it had no right to make opportunity sales. And that when it did make opportunity sales, it violated the system agreement by including them in its customer base, its loads under 30.03. And that was the violation that the commission found. It found no violation of 4.05. It found no violation of a couple other provisions that were argued about. The violation in opinion 521 was including off system customer sales in the loads instead of treating them differently as sales to others. All right. So in that case, what you're saying is they didn't really make a decision earlier that they contradicted with their determination that it was a that these should be treated as joint account sales, right in phase three. Right. And let me make it even clearer, the three phase litigation, the commission looked at, and there were the other issues that came up about bandwidth adjustments and so on. But the commission, and we did this in our brief, we presented this way to the court and the orders presented this way. Phase one was liability. Is there a violation of the system agreement? Does it warrant awarding damages? Phase two, methodology. In phase two, the parties only litigated over three test years. And I always forget which years they are. They are not 2000. I believe it was 2003, 2006. And the other one was either four or five. I don't remember which to litigate the methodology. And so the commission says in phase three, in opinion 565, that this phase is the first phase where the entire 10 years of transactions were on the table. The liability is there. We've already decided the liability opportunity sales that were put into load in section 30.03 are the liability. And what we have in the evidence I cited earlier, including Louisiana's own rebuttal testimony, they didn't dispute. They may have disputed how the, they did not dispute that those sales had been treated as joint account sales at that point. And even if they had disputed, the commission still had evidence in the testimony of trial staff witness Salmon and in energy's testimony that it put in, but that is what had happened with those first nine months. The commission had sufficient evidence to make that finding as to those nine months for the first time. And it wasn't, it was finding they were never of the sort of violation that we found in phase one to begin with. Therefore, they are not part of the damages to be calculated in phase three. And they said the commission says this and fully quantum suggested there's also an explanation problem. The commission. Yeah, I looking at 565 in particular, and I in paragraph 106, which is on page 108. The total damages calculation for the entire period of the opportunity sales was not at issue in this proceeding until this phase, phase three. And, but previously, I'm pair of 103 on the page before. That's where the commission makes the finding that the grand golf sales at issue these nine months were not improperly allocated under section 30.03. Again, that's the opinion 521 violation. And that's why the commission went on to say, I believe in the recurring order that, yeah, in paragraph 46 on day 118 and 119. This is not a collateral attack on opinion 521. And it repeat it cites back to what I just read you from paragraph 106 in the first order that the total damages calculation for the entire period was not an issue until now. So do you is it first position that something about the settlement agreement precludes they're making claims of this nature, or is the settlement agreement issue only with respect to the new complaint? I believe it's only with with respect to the new complaint, the litigation, the out of scope finding in in phase three, whatever they want to argue about the commission being wrong, right or wrong about the scope finding. That's all part of the first proceeding that continued. I continued so it had nothing to do with the settlement. Right? I would like to make one point. There's nothing first of all, two points that the court, of course, upheld the those the phase one, two and three orders in all respects, but in particular, its discretion as to scope findings. And in particular, the Arkansas Commission had raised a different issue that the commission kept saying we're not deciding here because it's beyond the scope. And the court very strongly affirmed that that and that's not unusual in these cases, this the phase one, two and three case first arose in an earlier case, where some of these off system sales were discovered. And the commission said, that's not really an issue here. And the court said, whatever the commission said about that was dicta, go file a complaint. I could I could say a number of cases where that's happened. There have been a number of offshoots of other cases, some issue comes up, the commission says that's not within the scope of this case, Louisiana goes and files a separate complaint. So that was something that happened pretty quickly. All right. Thank you, Mr. Farnam. Take two minutes. Thank you, Your Honor, my opponent just said that Energy Arkansas made joint account sales in these are joint account sales made by Energy Arkansas that can't be done. The system has to make a joint account say, I would like to address Judge Jackson's question. And there is perhaps, you have to understand what's going on here to really get it, I think, just on the basis of the briefs. When they first started doing this, they did distribute some margins to the other companies. But they still sourced the sales out of Grand Gulf. In other words, they did not find the most expensive energy on the system as they're supposed to do for a joint account sale. Then rather than using the fuel cost of Grand Gulf, which is about, you know, five to $10 a megawatt hour, they paid Arkansas, which didn't generate the energy in the first place. They paid Arkansas avoided cost, which was more like 70 or $80 a megawatt hour, totally fictitious. And they then had a tiny bit of margins that they distributed to the other companies. Later, they just actually they went, they got rid of that, you know, extra bureaucracy. And they started allocating the sales directly into Arkansas's load. But in 1251, the court doesn't say anything about it was a joint account sale or it wasn't a joint account sale. It says the violation is allocating something besides the most expensive energy on the system to either kind of sale. There is no dispute that they didn't do that. There's so many numbers. You say the court decision of the court that came out in June 12, not the FERC, the court, that's court affirming FERC on finding the violation to be under 30.04 by the fact that they didn't allocate the correct energy. Now, in a sense, they were called joint account sales, although Energy had to know this when they answered those data requests, because they had to rig the ISB to do what they did. They had to rig it in several ways, paying avoided cost, and, you know, putting the Grand Gulf Energy instead of the system Arkansas sale, because their position in the case was, oh, an individual operating company can make a sale. Then they change their mind in phase three and say, oh, you know, this violation of 30.03a when FERC said it was 30.04. You know, it's to me, it's dumbfounding, but that's what happened. You might want to take a look at 825LA, which is the application for rehearing and the appeal provision. It specifically says any state municipality or state commission agreed by an order. We paid higher rates just like the ratepayers. All right. Thank you, Madam. Madam Clerk, would you give us a adjournment, please?
judges: Henderson, Jackson, Sentelle